GUY STANDARD *et al.*

*v.*

WILLIAM J. STANDARD.

*Opinion filed October 23, 1906.*

1. STATUTE OF FRAUDS—*what must be proved to take oral promise to convey out of statute.* To justify a court of equity in specifically enforcing an oral promise to convey land where the Statute of Frauds is pleaded, the complainant must establish the promise by clear proof that the promisee took possession under the terms of the promise and that he made lasting and valuable improvements upon the land with his own funds, relying upon the promise, with the knowledge of the promisor.

2. EVIDENCE—*where declarations are relied upon the proof must be clear.* Where the only proof relied upon to establish an oral agreement by a father to convey land to his son consists of declarations of the father to third persons, the son being dead and the father disqualified from testifying, such proof must be clear, definite and unequivocal.

APPEAL from the Circuit Court of Union county; the Hon. W. W. DUNCAN, Judge, presiding.

W. W. CLEMENS, and JAMES LINGLE, for appellants.

D. W. KARRAKER, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a bill in chancery filed by the appellants, by their next friend, against the appellee, in the circuit court of Union county, to enforce the specific performance of an alleged parol contract or promise for the conveyance of land from a father to a son in case the son would live upon the land and improve the same.

The allegations of the bill are, that William J. Standard, the father of Warren Standard and the grandfather of the appellants, was the owner of two hundred acres of land in Union county, upon which he and his wife, Elizabeth J. Standard, resided as their home; that their son, Warren

Standard, made his home with his parents, he being their only child; that said Warren Standard, in the year 1890 and when he was twenty-four years of age, married the mother of the appellants; that said Warren Standard died intestate in the year 1898, leaving Guy Standard, Lester Standard and Warren Standard, the appellants, his children and sole heirs-at-law, and Laura Standard, his widow, by whom the appellants, they being minors, sue as their next friend; that upon the marriage of Warren Standard he and his wife, Laura, went to the home of said William J. Standard and wife to live, where they continued to reside until the death of Warren Standard; that within a week or two following the marriage of Warren Standard a cyclone visited the farm in question, laying waste its chief improvements, namely, the houses, barns, out-buildings, fences, orchards, etc., whereupon said appellee and his wife requested of Warren Standard, and Laura, his wife, that they live on the farm with them permanently and that they assist them in restoring said improvements, and that in case they complied with said request said William J. Standard and wife promised that said farm should be the property of Warren Standard; that said Warren Standard and wife accepted said proposition and remained with William J. Standard and wife upon said farm and contributed labor and means to restore said improvements; yet the said William J. Standard during the lifetime of Warren Standard, and subsequent thereto, had failed and refused to comply with said promise by conveying said farm to Warren Standard or the appellants; that Elizabeth J. Standard died January 31, 1903, and the appellee subsequently married Lucretia Standard, who has departed this life since the commencement of this suit. William J. Standard filed an answer to the bill, denying that he ever promised to give or to convey said farm to Warren Standard, or that Warren Standard had any interest in said farm during his lifetime, or that the appellants had any interest therein subsequent to the death of their father, Warren Standard,

and pleaded the Statute of Frauds. A replication was filed and a trial was had in open court upon depositions and oral and documentary evidence, and a decree was entered dismissing said bill for want of equity, and an appeal has been prosecuted to this court by the complainants.

It is clear the decree of the circuit court is correct unless the evidence found in the record is such as to take the case out of the operation of the Statute of Frauds. In order that a parol contract or promise to convey lands may be specifically enforced by a court of equity where the Statute of Frauds is pleaded, the complainant must establish, first, the contract or promise to convey by clear and unequivocal evidence; second, that the contract or promise to convey has been acted upon by the vendee or promisee by taking possession of the land under the terms of the contract or promise to convey; and third, that the party claiming the benefit of the parol contract or promise to convey has made valuable and permanent improvements, with his own funds, upon the land, relying upon the contract or promise to convey, with the knowledge of the vendor or promisor. In *Worth* v. *Worth*, 84 Ill. 442, on page 443, it was said: "The authorities all agree that a parol contract to convey will not be decreed in a court of equity unless it appears to be certain and definite in its terms and established by evidence free from doubt or suspicion." And in *Clark* v. *Clark*, 122 Ill. 388, on page 391: "The specific performance of a parol contract for the sale of land will not be enforced by a court of equity unless in addition to the other requisites hereinafter named such contract is established, by competent proofs, to be clear, definite and unequivocal in its terms." And in *Geer* v. *Goudy*, 174 Ill. 514, on page 521: "In order to take a case out of the operation of the Statute of Frauds a parol contract or oral promise to convey land should be clear and certain in its terms, and should be established by testimony of an undoubted character, which is clear, definite and unequivocal." In this case no witness was called who was present when the

alleged promise to convey was made, and the lips of Warren Standard, the father of appellants, were closed by death, and the appellee was rendered incompetent as a witness by the statute. And in *Geer* v. *Goudy, supra,* on page 521, it was said: "When a court of equity is called upon to decree the specific performance of a parol agreement or an oral promise to convey land, alleged to have been made between father and son, after both are dead, the court must be well satisfied of the existence and character of the agreement or promise, and of the substantial justice of the claim to the exercise of its powers." Here the proof relied upon was of the same character as that relied upon in *Worth* v. *Worth, supra,* and consisted of admissions of appellee, made, in many instances, in casual conversations with parties in no way interested in the land and when the appellee and his son were apart, long before the suit was commenced, to the effect that the appellee had given the farm to Warren; that the farm was Warren's; that all the appellee and his wife wanted was a living, and after they died the land would belong to Warren or Warren's boys, and similar expressions. In the *Worth case,* on page 443, it was said: "While we do not hold that a case may not be made out by proof of the declarations of a person, there are, however, respectable authorities that go that far; yet we are not satisfied that the evidence in this case is of that clear, definite and satisfactory character that it should be to require a court to compel, by decree, the conveyance of land." And in *Geer* v. *Goudy, supra,* on page 522: "All the authorities agree that such a promise must be established by proof which is clear, definite and unequivocal. Mere declarations made by the promisor or donor to third persons do not constitute such clear, definite and unequivocal testimony." A number of witnesses called by the appellee testified to statements made by Warren Standard after the promise to convey was alleged to have been made and within a few months of his death, which were inconsistent with the claim that he owned the land or had an interest therein.

From a careful consideration of all the evidence in the record we are convinced that the appellants failed to establish a contract or promise to convey by that character of evidence and in the clear and unequivocal manner which the law requires to entitle them to a decree for a specific performance of said alleged parol contract.

If, however, it were conceded that the promise to convey was amply proven, still we think the evidence fails to show that Warren Standard ever took possession of the farm under the terms of the contract or expended any of his own funds in making valuable or lasting improvements upon said farm. In the *Goudy case,* on page 521, it is said: "Equity will not enforce the promise of a gift of land by the father to the son, unless the promise has not only been acted upon by taking possession of the land, but also by the expenditure of money and the making of valuable and permanent improvements with the knowledge and consent of the promisor." And in *Shovers* v. *Warrick,* 152 Ill. 355, on page 361, in discussing the question now under consideration, it was said: "It must affirmatively appear that the possession was taken under the agreement relied upon and in part performance of it, and that the improvements were made under the contract itself and not otherwise." And in *Seitman* v. *Seitman,* 204 Ill. 504, on page 507: "To take a case out of the Statute of Frauds upon the ground of part performance, all acts done thereunder must be clear and definite and referable exclusively to the contract." And in *Geer* v. *Goudy, supra,* on page 525: "Where the son goes into possession of property owned by the father, and the improvements made thereon are paid for with the money of the father and not of the son, there is not such part performance as satisfies the requirements of the Statute of Frauds."

The evidence shows that Warren Standard was living at home at the time he was married; that after his marriage he took his wife to his father's house, and that he and his wife, and subsequently his children, remained in his father's

family so long as he lived; that there was no change in the management of the farm or in the manner in which the business on the farm was carried on after the marriage of the son or after the buildings upon the farm destroyed by the cyclone were re-built, and that while the son worked upon the farm, the father paid with his own funds for all the improvements that were placed thereon, and paid the taxes that were assessed upon the farm and on the personal property kept upon the farm. We have been unable to discover that the son ever made any claim, during his lifetime, that he was in possession of the land as owner under a parol contract or promise from the father that the land should be conveyed to him, and there is no evidence in the record that the son ever expended one cent of his money in erecting improvements of a valuable and permanent character upon the farm.

Finding no reversible error in this record the decree of the circuit court will be affirmed.      *Decree affirmed.*

Mr. JUSTICE VICKERS took no part in the decision of this case.